723 S.E.2d 589

**The STATE, Respondent,**

v.

**Reginald R. LATIMORE, Petitioner.**

No. 27102.

Supreme Court of South Carolina.

Heard Nov. 16, 2011.
Decided March 14, 2012.

Appellate Defender LaNelle Cantey DuRant, of Columbia, for Petitioner.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General William M. Blitch Jr., all of Columbia, and Solicitor W. Walter Wilkins III, of Greenville, for Respondent.

Chief Justice TOAL.

Reginald R. Latimore (Petitioner) was convicted of violating section 23–3–470 of the South Carolina Code, S.C.Code Ann. § 23–3–470 (Supp.2011), by failing to timely re-register as a sex offender and received a sentence of ninety days of home incarceration with GPS monitoring. The court of appeals affirmed Petitioner's sentence. *State v. Latimore*, 390 S.C. 88, 700 S.E.2d 456 (Ct.App.2010). We granted certiorari to consider Petitioner's argument that the court of appeals erred in affirming the circuit court's denial of Petitioner's directed verdict motion, and now affirm that decision as modified.

## FACTS

In 2004, Petitioner pled guilty to committing a lewd act on a child. He was released from prison in 2005, and was required to register as a sex offender by the Sex Offender Registry Act. S.C.Code Ann. §§ 23–3–400 *et seq.* (2007 & Supp.2011). Petitioner registered in Greenville County on August 3, 2005, and signed three forms acknowledging that he had to re-register for 2006 within thirty days after the anniversary of his most recent registration, that is, before September 4, 2006. He also signed two forms acknowledging that he must notify the sheriff's office of any change in address. On one of the

forms Petitioner acknowledged that he had to pay $100, either by cash or money order, at the time he re-registered.

In 2006 the General Assembly revised the sex offender registry statute to require offenders to re-register twice a year, once in their birth month and again six months later. *Id.* § 23–3–460. This amendment, which became effective July 1, 2006, altered Petitioner's annual re-registration date to require him to register both in June, when his birthday fell, and again in December. Petitioner did not re-register before September 4, 2006, when he was originally informed he must re-register, nor did he re-register in December 2006, as required by the amended statute.

Petitioner was charged under the amended act with failing to register in December 2006. At trial, the State relied on both the forms Petitioner had executed in August 2005 requiring he register "each year for life within 30 days after the anniversary date of my last registration ..." and upon the testimony of the sex offender registry coordinator that Petitioner had no contact with the office during 2006. The coordinator acknowledged that Petitioner had changed his address from that reflected on his initial forms. The coordinator testified that the forms were filled out using the address Petitioner had given the Department of Corrections, but that when he appeared in person to complete the forms in August 2005, he gave the new address, which was then entered in the computer. Questioned about a February 1, 2006 date reflected on the change of address form found in Petitioner's record, the coordinator explained the date reflected the day that the document was printed from a website, and not the date the change of address was recorded. Finally, the coordinator testified she had no contact with Petitioner after the August 2005 registration.

After the State rested, Petitioner moved for a directed verdict on the ground he could not be convicted consonant with due process because he had not received actual notice of the change in the registration statute, which moved Petitioner's re-registration date from before September 4, 2006, to by December 31, 2006. The trial judge denied the motion. Petitioner testified that he called the sex offender registry coordinator in February 2006 to obtain approval to move into a new

house, and he was under the belief that this phone call satisfied his re-registration requirement. At the close of the defense case, Petitioner renewed his directed verdict motion, which was again denied.

## ISSUE

Did the court of appeals err in affirming the circuit court's denial of Petitioner's directed verdict motion?

## ANALYSIS

A directed verdict motion should be denied if there is direct or substantial circumstantial evidence reasonably tending to prove the guilt of the accused. *State v. Dickey*, 394 S.C. 491, 716 S.E.2d 97 (2011) (internal citation omitted). Petitioner contends the court of appeals erred in affirming the trial court's denial of his directed verdict motion, alleging due process required the motion be granted. We disagree.

Petitioner relies upon *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), to support his contention that due process requires a person have actual notice of changes to a law that imposes a duty on that person to register. In *Lambert*, the United States Supreme Court held due process was offended by the conviction of an individual for violating a municipal registration ordinance requiring all convicted felons to register. *Id.* at 230–31, 78 S.Ct. 240. The Court found a constitutional deprivation in Lambert's conviction because there was no evidence she had actual knowledge of the registration requirement, nor was there any evidentiary showing of the probability of such notice. *Id.* at 227, 78 S.Ct. 240.

The General Assembly's 2006 amendment to the re-registration statute had the effect of imposing an additional registration requirement on sex offender registrants of which they were not required to be actually notified. Consistent with *Lambert*, we find that due process requires a sex offender registrant to have received actual notice of the change in re-registration requirements imposed by the 2006 amendment to section 23–3–460. However, under the facts of this case, where the biannual requirement extended Petitioner's time to re-register, Petitioner is not entitled to reversal.

██ The record contains evidence that Petitioner had actual notice of the annual re-registration requirement. The State presented evidence that Petitioner had actual knowledge that he was required to re-register by September 4, 2006, and that the registration required a $100 payment. While there was conflicting evidence whether Petitioner was told he had satisfied the re-registration requirement in February 2006, that evidence created a jury issue, not entitlement to a directed verdict.

The General Assembly's amendment to section 23–3–460 effectively gave Petitioner an almost four-month extension on his deadline to re-register. This extension of the re-registration period did not create a due process problem where Petitioner never sought to re-register either during the twelve-month period of which he had actual notice, or during the four-month extension. Unlike the defendant in *Lambert*, Petitioner was the architect of his own disaster. Had he attempted to fulfill his annual re-registration requirement in a timely manner, he would have been informed of the new biannual requirement.

██ Accordingly, we agree with the State that the court of appeals properly upheld the circuit court's denial of Petitioner's motion for a directed verdict. However, we hold that to satisfy due process a convicted sex offender must have had actual notice of the 2006 change to section 23–3–460, which imposed an additional registration requirement, to be convicted of violating section 23–3–470 of the South Carolina Code.[1]

## CONCLUSION

The decision of the court of appeals affirming Petitioner's conviction is

**AFFIRMED AS MODIFIED.**

BEATTY, KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., concurring in a separate opinion.

---

1. To be clear, this is a narrow holding related only to notice of the 2006 amendment to section 23–3–460 and does not require that sex offender registrants receive actual notice twice yearly of their upcoming duty to re-register under that statute.

Justice PLEICONES.

I agree that we should affirm the Court of Appeals' opinion, but write separately as I do not believe this situation is controlled by *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). *Lambert* invalidated a conviction for violating a municipal ordinance requiring all convicted felons residing in the city to register. The Court found Lambert's conviction violated due process, holding:

Registration laws are common and their range is wide. [Citation omitted]. Many such laws are akin to licensing statutes in that they pertain to the regulation of business activities. But the present ordinance is entirely different. Violation of its provisions is unaccompanied by any activity whatever, mere presence in the city being the test. Moreover, circumstances which might move one to inquire as to the necessity of registration are completely lacking. At most the ordinance is but a law enforcement technique designed for the convenience of law enforcement agencies through which a list of the names and addresses of felons then residing in a given community is compiled. The disclosure is merely a compilation of former convictions already publicly recorded in the jurisdiction where obtained. Nevertheless, this appellant on first becoming aware of her duty to register was given no opportunity to comply with the law and avoid its penalty, even though her default was entirely innocent. She could but suffer the consequences of the ordinance, namely, conviction with the imposition of heavy criminal penalties thereunder. We believe that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand. As Holmes wrote in The Common Law, 'A law which punished conduct which would not be blameworthy in the average member of the community would be too severe for that community to bear.' *Id.*, at 50. Its severity lies in the absence of an opportunity either to avoid the consequences of the law or to defend any prosecution brought under it. Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process. Were it otherwise, the evil would be as great

as it is when the law is written in print too fine to read or in a language foreign to the community.

Here we are not asked to decide the fate of an individual who ran afoul of an obscure catch-all local registration rule, but rather with the question whether a change in the re-registration schedule for convicted sex offenders already on that registry requires actual knowledge. I would hold that due process does not require actual notice of the 2006 statutory change and further note that the majority appears to agree with me, upholding petitioner's conviction based upon his circumstances rather than on actual knowledge of the change in registration dates.

I concur.