733 S.E.2d 890

The STATE, Respondent,

v.

Zeb Eron BINNARR, Petitioner.

No. 27122.

Supreme Court of South Carolina.

Heard Dec. 1, 2011.

Decided May 9, 2012.

Rehearing Denied July 12, 2012.

158

H. Stanley Feldman, of Charleston, for Petitioner.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General William M. Blitch, Jr., of Columbia, Solicitor Scarlett Anne Wilson, of Charleston, for Respondent.

Justice BEATTY.

Zeb Eron Binnarr ("Petitioner") was convicted by a jury for failing to timely register as a sex offender pursuant to section 23-3-460 [1] of the South Carolina Code. Petitioner appealed his conviction primarily on the ground that he did not receive actual notice of a change in the law regarding sex offender registration requirements. The Court of Appeals affirmed Petitioner's conviction. *State v. Binnarr*, Op. No.2010–UP–077 (S.C. Ct.App. filed Feb. 2, 2010). This Court granted Petitioner's request for a writ of certiorari to review the decision of the Court of Appeals. We reverse.

## I.  Factual/Procedural History

In 2002, Petitioner was convicted of criminal sexual conduct in the third degree. As a result of this conviction, Petitioner was required to register annually as a sex offender by the Sex Offender Registry Act.[2] In February 2006, Petitioner registered with the Charleston County Sheriff's Office and, in turn,

---

1.  S.C.Code Ann. § 23–3–460(A) (Supp.2011).

2.  S.C.Code Ann. §§ 23–3–400 to –555 (2007 & Supp.2011).

was given a form to sign stating he understood that he was required to register again the following year in February 2007.

On July 1, 2006, section 23–3–460 was amended to require sex offenders to register biannually.[3] Due to this amendment, Petitioner was required to register again in August 2006, which was six months after his birth month. When Petitioner failed to register in August 2006, he was arrested in March 2007 and indicted pursuant to section 23–3–470.[4]

During Petitioner's jury trial, the State called Detective Denise Catlett of the Charleston County Sheriff's Office, who testified that she managed the county's sex offender registry. Catlett testified she was responsible for notifying sex offenders of the change in the law in 2006. According to Catlett, the change in the law was "all over the news" and "in the newspaper" for months preceding and after July 2006. Catlett testified she took additional steps to notify sex offenders of the change in the law by mailing letters to sex offenders at their address on file, which sex offenders were required to keep current,[5] informing them of the new law and the requirement to re-register.

Catlett stated that, after the law changed and sex offenders failed to appear for the biannual registration, a certified letter was sent to the address on file for the sex offender. Catlett testified that Petitioner was mailed a letter to his address on file regarding the new registration requirements.[6] This letter,

---

3. Section 23–3–460 provides in pertinent part:

   A person required to register pursuant to this article is required to register biannually for life. For purposes of this article, "biannually" means each year during the month of his birthday and again during the sixth month following his birth month.

   S.C.Code Ann. § 23–3–460(A) (Supp.2011) (amended pursuant to Act No. 342, 2006 S.C. Acts 2708).

4. S.C.Code Ann. § 23–3–470(A) (2007) ("It is the duty of the offender to contact the sheriff in order to register. . . . If an offender fails to register . . . he must be punished as provided in subsection (B).").

5. S.C.Code Ann. § 23–3–460 (2007) (providing that a sex offender must send written notice to the appropriate sheriff's office of any change of address within ten days of establishing a new residence).

6. Catlett stated that she "generally" mailed out the letters the month before a sex offender was required to register; for example, if a person

which was mailed via regular mail, was not returned. When Petitioner failed to appear to re-register, the sheriff's office mailed a certified letter to him. Catlett confirmed that this letter was never picked up and was returned to the Charleston County Sheriff's Office after three attempted deliveries by the Postal Service. Catlett admitted that Petitioner may not have received either letter prior to his required registration date in August 2006. She stated, however, that she waited until January 14, 2007 to sign an arrest warrant for Petitioner.

At the conclusion of the State's case, Petitioner's counsel moved for a directed verdict. In his argument, counsel cited *Lambert v. People of the State of California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957),[7] for the proposition that Petitioner was entitled to actual notice of the change in the law in order to comply with Petitioner's due process rights. Although the indictment for the offense alleged notice was given prior to Petitioner's registration date,[8] counsel claimed the State had failed to present evidence that it provided Petitioner with actual notice of the change in the law.

In response, the State asserted it was Petitioner's responsibility to maintain a current address with the Charleston County Sheriff's Office. Based on the language of the statute, the State claimed "[t]here was no duty for notification" and that the letters were mailed as a "courtesy." The State contended it satisfied any burden of notification by mailing a letter to Petitioner's last known address and noted that this letter was not returned to the sheriff's office.

---

was required to register in August, he would receive a letter around July 10th.

7. In *Lambert*, the defendant was convicted of violating the Los Angeles felon registration ordinance. On appeal, the United States Supreme Court ("USSC") reversed her conviction on the ground the registration provisions violated due process when applied to a person who had no actual knowledge of the duty to register. Although the Court recognized the well-established principle that ignorance of the law is no excuse, it refused to implement such principle except where it could be shown that the person had knowledge of the duty to register or a showing was made of the probability of such knowledge. *Lambert*, 355 U.S. at 227–29, 78 S.Ct. 240.

8. The indictment charged Petitioner with failing to register as a sex offender on or about August 18, 2006 "after being instructed to do so."

The trial judge denied Petitioner's motion for a directed verdict. Although the judge recognized that the statute did not "mention the notification requirement," he rejected any contention that it was a "law of strict liability." Despite the absence of statutory language, the judge found the "Sheriff's Department undertook to give some notice." Because there was circumstantial evidence the sheriff's office provided notice to Petitioner of the registration requirement, the judge ruled that whether Petitioner had notice of the change in the law was an issue for the jury.

Following the judge's ruling, defense counsel called Petitioner as a witness. Petitioner testified he did not receive any notice of the change in the law that required him to re-register in August 2006 rather than February 2007. Petitioner also denied receiving any of the letters sent by Catlett; however, he confirmed he lived at the address on file with the Charleston County Sheriff's Office and that he was living at that address in 2006.

After closing arguments, the judge charged the jury, in part, by explaining the text of section 23–3–460 and the 2006 amendment to that statute. In outlining the elements of the offense, the judge relied on language in *Lambert*, stating:

> The question is whether or not [Petitioner] had actual knowledge or should have had knowledge of the requirement to register in this particular case, because you must find beyond a reasonable doubt that the State has proven that [Petitioner] had actual knowledge of the duty to register or that the State has proven beyond a reasonable doubt that [Petitioner] had the probability of such knowledge. If the State fails to convince you beyond a reasonable doubt that he knew of his duty to register bi-annually or that they failed to convince you of the probability of that knowledge, then it has failed to meet its burden of proof in this case *because the law requires either actual knowledge of the duty to register or proof of the probability of such knowledge and the subsequent failure to comply in order to meet the burden of proof which is upon the State.* (Emphasis added.)

The judge further explained that in order to "constitute a crime an act has to be accompanied by some criminal intent

... [a]nd in this particular case ... knowledge is the element that is required, either actual knowledge or the probability of such knowledge."

Ultimately, the jury convicted Petitioner of the charged offense and the trial judge sentenced Petitioner to the statutorily-mandated term of ninety days in jail.[9]

Petitioner appealed his conviction to the Court of Appeals. On appeal, Petitioner asserted the trial judge erred in: (1) finding, as a matter of law, that section 23-3-460 did not contain a notice requirement as the lack of a notice requirement violated Petitioner's procedural due process rights; (2) failing to apply the notice requirements contained in section 23-3-440 [10] to section 23-3-460; and (3) denying the motion for directed verdict given there was no evidence presented that Petitioner received notification of the new registration requirement.

The Court of Appeals affirmed Petitioner's conviction. *State v. Binnarr*, Op. No.2010-UP-077 (S.C. Ct.App. filed Feb. 2, 2010). In so ruling, the court specifically found the Legislature did not include language in section 23-3-460 requiring the State to notify sex offenders about the change in the registration requirements when it amended the statute in 2006. The court declined to apply the notification requirement of section 23-3-440 into section 23-3-460, finding a clear reading of that statute "reveals the statute only requires the State to give notice of the registration requirement to a sex offender within one day of the sex offender's release from prison." *Id.*, slip op. at 1.

Additionally, the court found section 23-3-460 did not violate Petitioner's procedural due process rights. Citing *State*

---

9.  In 2006, one convicted of a first offense for failing to register by the deadline was subject to a mandatory term of ninety days' imprisonment. S.C.Code Ann. § 23-3-470(B)(1) (2007).

10.  Section 23-3-440 provides that before an offender is released from custody or placed on parole, "[t]he Department of Corrections ... shall provide verbal and written notification to the offender that he must register with the sheriff of the county in which he intends to reside within one business day of his release." S.C.Code Ann. § 23-3-440(1) (2007).

*v. Edwards,* 302 S.C. 492, 397 S.E.2d 88 (1990),[11] the court noted the new, biannual registration requirement became effective one month before Petitioner was required to register with the sheriff's office. Thus, the court concluded that Petitioner had "fair notice that the failure to register on a biannual basis could result in a crime." *Id.,* slip op. at 2. The court further found the sheriff's office provided fair notice to Petitioner of the new registration requirements when it mailed a blanket notice and a certified letter to Petitioner's residence. *Id.*

Following the denial of his Petitions for Rehearing and Rehearing, Petitioner sought a writ of certiorari for this Court to review the decision of the Court of Appeals. This Court granted the petition.

## II. Discussion

Petitioner asserts the Court of Appeals erred in holding that he was not entitled to actual notice of a change in the law regarding his registration as a sex offender. Petitioner claims the notice requirement is central to the Sex Offender Registry statutes and, thus, the failure to provide him with actual notice of the 2006 amendment to section 23–3–460 violated his rights to due process and equal protection.

In support of this contention, Petitioner notes that in February 2006 the Charleston County Sheriff's Office gave him "written, hand delivered notice that his next registration would occur in February 2007." Because the sheriff's office provided him with these explicit instructions, Petitioner claims he did not have "fair notice" of the new registration date as he was misled regarding the correct date. In order to comply

---

11. In *Edwards,* the defendant was convicted of DUI and sentenced as a second offender based on a 1988 amendment that extended the time period in which prior DUI convictions could be considered in determining the penalty for subsequent DUI convictions. *Edwards,* 302 S.C. at 493, 397 S.E.2d at 89. On appeal, this Court considered whether the amendment violated the due process rights of Edwards because he did not receive notice of the change in the law. *Id.* at 494, 397 S.E.2d at 89. This Court concluded that, "[b]ecause the current offense took place after the effective date of the amendment, appellant clearly had notice that his 1983 conviction would be considered in determining his punishment for the current offense." *Id.* Accordingly, this Court found no violation of due process. *Id.* at 494, 397 S.E.2d at 89–90.

with this principle of "fair notice," Petitioner asserts that more was required than a simple recognition of the fact that the new law went into effect one month before he was required to register. At oral argument, Petitioner claimed he was entitled to in-person, written notification.

Recently, we addressed this precise question in *State v. Latimore*, 397 S.C. 9, 723 S.E.2d 589 (2012) (Shearouse Adv. Sh. No. 10 at 17). In *Latimore*, we held that "to satisfy due process a convicted sex offender must have actual notice of the 2006 change to section 23–3–460, which imposed an additional registration requirement, to be convicted of violating section 23–3–470 of the South Carolina Code." *Id.*, at 13, 723 S.E.2d at 591. Thus, based on *Latimore*, we agree with Petitioner that the Court of Appeals erred in declining to recognize that a defendant must have actual notice of the reporting require-ments before he can be convicted of violating section 23–3–470. We find this error in conjunction with the lack of direct or substantial circumstantial evidence that Petitioner had actual notice of the change in the law warrants the reversal of Petitioner's conviction.

In denying Petitioner's motion for a directed verdict, the judge specifically rejected any contention that the statute was a "strict liability law." As evidenced by his comments, it is clear the judge agreed with Petitioner's claim regarding his entitlement to actual notice of his duty to re-register. Al-though the judge's ruling was based on a correct interpreta-tion of the law, i.e. that actual notice was required, our analysis is not concluded as the question becomes whether the State presented sufficient evidence to withstand Petitioner's motion for a directed verdict.

"A defendant is entitled to a directed verdict when the state fails to produce evidence of the offense charged." *State v. Weston*, 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006). "When reviewing a denial of a directed verdict, this Court views the evidence and all reasonable inferences in the light most favorable to the state." *Id.* "If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury." *Id.* at 292–93, 625 S.E.2d at 648.

■ Vital to our assessment of the sufficiency of the evidence are the provisions of our state and federal Due Process Clauses, which provide that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; S.C. Const. art. I, § 3. "The fundamental requirements of due process include notice, an opportunity to be heard in a meaningful way, and judicial review." *Kurschner v. City of Camden Planning Comm'n,* 376 S.C. 165, 171, 656 S.E.2d 346, 350 (2008).

■ "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *S.C. Dep't of Soc. Servs. v. Wilson,* 352 S.C. 445, 452, 574 S.E.2d 730, 733 (2002) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). The requirements in a particular case depend on the importance of the interest involved and the circumstances under which the deprivation may occur. *S.C. Dep't of Soc. Servs. v. Beeks,* 325 S.C. 243, 246, 481 S.E.2d 703, 705 (1997). Accordingly, a claim of denial of due process must be analyzed with a two-part inquiry: (1) whether the interest involved can be defined as "liberty" or "property" within the meaning of the Due Process Clause; and, if so (2) what process is due in the circumstances. *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 571–73, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ Here, Petitioner was subject to a ninety-day mandatory term of imprisonment for failing to register. Without question, imprisonment is recognized as one of the greatest deprivations of liberty. As our United States Supreme Court has explained:

Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action. *Youngberg v. Romeo,* 457 U.S. 307, 316, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28 (1982). "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Jones [v. U.S.], supra,* 463 U.S. [354] at 361, 103 S.Ct. [3043] at 3048 [77 L.Ed.2d 694 (1983) ] (internal quotation marks omitted). We have always been careful not to "minimize the importance and fundamental nature" of the individual's right to liberty. [*U.S. v.*] *Salerno, supra,* 481

U.S. [739] at 750, 107 S.Ct. [2095] at 2103 [95 L.Ed.2d 697 (1987) ].

*Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992).

With these principles in mind, we find the State failed to produce any direct or substantial circumstantial evidence from which a jury could determine that Petitioner received actual notice of his duty to re-register. Because Petitioner denied receiving any letters from the Charleston County Sheriff's Office regarding the biannual re-registration requirement, there is no direct evidence of actual notice.

In terms of circumstantial evidence, the State presented Detective Denise Catlett as its only witness who testified that she "generally" sent letters via first-class mail to the more than 800 registered sex offenders in Charleston County, and that the letter addressed to Petitioner was not returned as undeliverable. She further testified the certified letter mailed to Petitioner regarding his failure to appear to re-register was returned to the Charleston County Sheriff's Office as unclaimed. Significantly, Catlett acknowledged that Petitioner may not have received either letter prior to his required registration date in August 2006.

We also note the State failed to produce a copy of the actual letter but, instead, simply relied on Catlett's testimony that she, as a matter of practice, mailed these form letters out on the tenth of the month preceding the re-registration deadline. Without a copy of the letter, there was no evidence that the letter had been properly printed, addressed, and mailed to Petitioner. *See* 58 Am.Jur.2d *Notice* § 43 (2002) ("It is not sufficient to assert that the general custom of one's office is to mail all letters. Proof of actual mailing or of an office practice and procedure followed in the regular course of business, which shows that the notice has been duly addressed and mailed, is required, even in the absence of a denial of receipt.").

Thus, we cannot conclude that an unreturned letter, without more, constitutes substantial circumstantial evidence that Petitioner received actual notice of his duty to re-register prior to the original February 2007 deadline. *Cf. Jones v. Flowers,* 547 U.S. 220, 234, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006)

(holding that taxpayer was not provided sufficient notice of a tax sale involving his property where unclaimed letters "suggest[ed] that [the taxpayer] had not received notice that he was about to lose his property," and concluding that the "State should have taken additional reasonable steps to notify [the taxpayer], if practicable to do so").

In reaching this conclusion, we express our concern regarding the implementation of the biannual re-registration requirement. Because the change in the law imposed an *additional* registration requirement for sex offender registrants, who were formerly required to register annually, we believe the Sheriff's Office needed to do more than passively rely on an unreturned letter to ensure compliance with the change in the law. In this limited set of circumstances, we find the Sheriff's Office could have made a phone call or sent a deputy to Petitioner's house as his contact information had not changed between August 2006, the new deadline, and February 2007, the original deadline.

Given the significant deprivation of liberty for one who is convicted of failing to re-register due to a change in the law, we hold that substantial circumstantial evidence of actual notice is not satisfied by a negative inference arising from unreturned first class mail. To hold otherwise would effectively minimize a person's significant liberty interest as we have recognized the need for strict compliance to notice requirements even in cases where a property interest was at stake. *Cf. Hawkins v. Bruno Yacht Sales, Inc.*, 353 S.C. 31, 39, 577 S.E.2d 202, 207 (2003) (recognizing that section 12–51–40 of the South Carolina Code, which controls the procedure for notifying delinquent taxpayers that property will be sold to collect delinquent taxes, required that "levy notices on personal property must be sent via certified mail, return receipt requested in order to accomplish 'levy by distress' ").

## III. Conclusion

In view of our decision in *Latimore*, we hold the Court of Appeals erred in declining to find that actual notice of the re-registration requirement found in section 23–3–460 was necessary to sustain a conviction under section 23–3–470. Because the State failed to provide any direct or substantial circumstantial evidence from which a jury could determine that

Petitioner had actual notice of the change in the law, we find the trial judge erred in failing to direct a verdict of acquittal. Accordingly, we reverse Petitioner's conviction.

**REVERSED.**

TOAL, C.J., KITTREDGE and HEARN, JJ., concur. PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent. As I noted in concurrence with this Court's recent decision affirming a conviction under S.C.Code Ann. § 23-3-470, *State v. Latimore,* 397 S.C. 9, 723 S.E.2d 589 (2012), I do not believe this situation is controlled by *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), and actual notice is not required for conviction under that section. Indeed, as I noted in *Latimore,* the Court's decision in that case turned on evidence of the petitioner's constructive notice, not evidence of actual notice.

Constructive, or inquiry, notice is the legal imputation of notice to a person based upon circumstances sufficient to substitute for actual notice. *See City of Greenville v. Washington Am. League Baseball Club,* 205 S.C. 495, 509, 32 S.E.2d 777, 782 (1945) ("[I]f there are circumstances sufficient to put the party upon inquiry, he is held to have notice of everything which that inquiry, properly conducted, would certainly disclose." (citations omitted)); *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 64–65, 504 S.E.2d 117, 123 (1998) (explaining that knowledge of facts or circumstances putting a party on notice to inquire constitutes constructive, not implied actual notice).

In *Lambert v. People of the State of California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), the United States Supreme Court applied a similar analysis to notice of criminal prohibitions, though without using the terminology of actual and constructive notice. In effect, the Court found in that case that the registration requirement was not a matter of common knowledge and no circumstances existed that would have given the defendant cause to inquire about the existence of such a requirement. Those circumstances are markedly different from the circumstances of a convicted sex offender

who has actual knowledge of registry-related requirements, including those of reregistering at certain intervals and maintaining his current address on file with the sheriff's office. *See United States v. Gould,* 568 F.3d 459, 468–69 (4th Cir. 2009) (distinguishing *Lambert* from federal sex-offender registration requirement applying to "a much more narrowly targeted class of persons in a context where sex-offender registration has been the law for years").

In *Latimore,* this Court found that "[h]ad [the petitioner] attempted to fulfill his annual re-registration requirement in a timely manner, he would have been informed of the new biannual requirement." 397 S.C. at 13, 723 S.E.2d at 591. Thus, the Court based its conclusion that the petitioner had been afforded adequate notice on facts and circumstances within his knowledge that effectively imposed upon him a duty to inquire. In particular, those circumstances were his duty to do an act that would have given him actual notice had he fulfilled that duty. Thus, the Court's analysis was consistent with *Lambert* and with the definition of constructive notice.

In my view, the facts of this case require the same result. When a convicted sex offender is subject to a duty to maintain a current address with the appropriate authorities, he has constructive notice as to any notification sent to that address. Thus, the evidence that the sheriff's office sent Petitioner a letter by regular mail, return receipt requested, and a certified letter that was returned undeliverable is sufficient evidence to find that he had constructive notice of the reregistration requirement. Indeed, the majority's ruling gives sex offenders who fail to maintain a current address or acknowledge receipt of mail at that address an advantage over those who do not.

The majority reasons that "[w]ithout a copy of the letter [that Detective Catlett testified was sent to Petitioner] there was no evidence that the letter had been properly printed, addressed, and mailed to Petitioner." This finding ignores Detective Catlett's testimony that the sheriff's office had a standard procedure for mailing unregistered letters, return service requested, to sex offenders based upon their month of registration, and that certified letters were sent to registrants who failed to reregister in response to the initial, unregistered

letters. The evidence that the registered letter sent to Petitioner was returned unclaimed after three delivery attempts is uncontradicted, and it substantiates Detective Catlett's testimony regarding the procedures used to notify and remind sex offenders of their registration obligations. Thus, the State presented "[p]roof of . . . an office practice and procedure followed in the regular course of business, which show[ed] that the notice ha[d] been duly addressed and mailed[.]" 58 Am. Jur.2d Notice § 43 (2002). This evidence would have supported a finding that Petitioner had constructive notice of the new, biannual registration requirement.

Moreover, in this case the jury was charged on the theory that Petitioner must have had actual knowledge of the reregistration requirement, whether shown by direct or circumstantial evidence, and it found Petitioner guilty under that standard. Based on the foregoing evidence, the jury could have determined that Detective Catlett sent a notification letter to Petitioner and he received it. Because there is evidence from which the jury could find that Petitioner had actual notice, I would uphold its finding.

Thus, I respectfully dissent.