759 S.E.2d 398

**David Ray TANT, Respondent,**

v.

**SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, Petitioner.**

**Appellate Case No. 2012–206988.**

**No. 27392.**

Supreme Court of South Carolina.

Heard Nov. 20, 2013.

Decided May 28, 2014.

Rehearing Denied July 10, 2014.

<hr>

336

Deputy General Counsel Christopher D. Florian, of Columbia, for Petitioner.

Desa A. Ballard and Harvey M. Watson, both of Ballard Watson Weissenstein, of West Columbia, and Douglas Jennings, Jr., of Douglas Jennings Law Firm, LLC, of Bennettsville, all for Respondent.

Justice HEARN.

This case calls upon us to consider the authority of the Department of Corrections to alter its initial determination as to the length of an inmate's sentence. Following his conviction for one count of assault and battery of a high and aggravated nature (ABHAN), one count of possession of a dangerous animal, and multiple counts of animal fighting, David Tant was remanded to the Department of Corrections. Upon receipt of his sentencing sheets, the Department recorded his sentence as fifteen years' imprisonment. However, the Department later determined the judge intended to sentence Tant to forty years' imprisonment and changed its records without notifying Tant.

 We hold that when the Department decides its original recordation of a sentence was erroneous, it must afford the inmate formal notice of the amended sentence and advise him of his opportunity to be heard through the grievance procedure. Furthermore, the Department is generally confined to the face of the sentencing sheets in determining the length of a sentence, but may refer to the sentencing transcript if there is an ambiguity in the sentencing sheets. Because we find both the sentencing sheets and the transcript in this case are ambiguous, we hold Tant's sentences run concurrently for a total of fifteen years' imprisonment. Accordingly, we affirm the court of appeals' opinion as modified.

## FACTUAL/PROCEDURAL BACKGROUND

Land surveyor Steven Baker was injured on Tant's property when he set off a booby-trap that fired shotgun pellets at him.

After law enforcement arrived to investigate the incident, the officers discovered several pit bulls and called Animal Control to process and seize the animals. The deputy in charge of processing the animals observed scars and other injuries on the dogs consistent with fighting, including puncture wounds. During further investigation, the police also discovered treadmills, cattle prods, chains, and breaking sticks.[1]

Tant pled guilty before the Honorable Wyatt T. Saunders, Jr. on November 22, 2004, to one count of ABHAN, one count of possession of a dangerous animal, and forty-one counts of animal fighting. Initially, the judge orally sentenced him to serve ten years' imprisonment for the ABHAN and "five years consecutive to [the ABHAN sentence]" on six of the animal fighting counts with the condition that if restitution were paid on two of those convictions, those sentences would be null and void. Tant was also sentenced to five years' imprisonment, suspended, on the remaining animal fighting charges and three years' imprisonment, suspended, for possession of a dangerous animal. When Judge Saunders asked if there were any questions, the solicitor requested clarification as to the first part of the sentence. Judge Saunders responded the first "four indictments for which [Tant] has been convicted of animal fighting, are consecutive to each other and consecutive to [the ABHAN sentence]." He asked if that was clear, and there was no objection. The judge then stated the two additional animal fighting sentences were for five years consecutive to the ABHAN sentence, but would be null and void upon payment of restitution. Again, there was no objection. Tant did not file a direct appeal.

The sentencing sheets for all six of the animal fighting charges at issue here—which were signed by the judge, the solicitor, and Tant's attorney—indicate each sentence is consecutive to the ABHAN sentence, but fail to reference the other charges. Tant began serving his sentence in November of 2004, and the Department read the sheets as indicating the animal fighting charges were to be served consecutive to the ABHAN charge, but concurrent to each other, for a total of fifteen years' imprisonment. This initial interpretation was documented in the Department's records and was used by the

---

1. These are apparently typical accoutrements of dogfighting.

Department of Parole, Pardon, and Probation to determine his parole eligibility date.

In January of 2006, a Department employee spoke with one of the attorneys who prosecuted Tant, about the calculation of Tant's sentence. That attorney informed the employee that he would draft an order for Judge Saunders clarifying that Tant's sentence was forty years instead of fifteen years. On July 5, 2007, the Department's general counsel, David Tatarsky, e-mailed the employee inquiring whether he received the order from Judge Saunders referenced in the employee's notes. Apparently, Judge Saunders sent the Department a letter on June 8, 2007, stating it was his intention that Tant's sentences all run consecutively for a total of forty years' imprisonment, with a ten year reduction upon payment of restitution. The Department thereafter updated Tant's sentence from fifteen to forty years on June 13, 2007, and Tant was informed of this change on July 12, 2007.

The following day Tant filed a Step 1 inmate grievance requesting his sentence be returned to fifteen years, which was denied based on Judge Saunders' letter. Tant then filed a Step 2 grievance claiming Judge Saunders' letter was not a court order and the animal fighting charges were to be served concurrently. This was reviewed by Tatarsky and denied on the grounds that the transcript of the guilty plea is also part of the sentencing record and it clearly demonstrates the judge's intention to impose a forty year sentence. This denial also referenced Judge Saunders' letter and stated judges "frequently clarify their sentencing intentions in letters to [the Department]."

Tant appealed to the Administrative Law Court (ALC) again challenging the Department's use of Judge Saunders' letter in calculating his sentence and also arguing Tatarsky was not authorized to rule on his grievance. The ALC held it was improper to consider the letter because Judge Saunders no longer had jurisdiction over the case. It further found the Department failed to address Tant's challenge as to whether Tatarsky was authorized to rule on the grievance, and thus deemed that issue conceded by the Department. The ALC also noted the Department should consider the transcript of the sentence in addition to the sentencing sheets and remand-

ed the case "to have an appropriate person review the grievance based upon the entire record to determine the calculation of [Tant's] sentence."

On remand, the Department again calculated Tant's sentence as forty years, this time quoting the transcript: "those additional four indictments, for which he has been convicted of animal fighting, are consecutive to each other and consecutive to [the ABHAN sentence]. Is that clear?"

Tant again appealed to the ALC, challenging the legality of relying on the transcript. The ALC affirmed, holding consideration of the transcript was appropriate to determine the intention of the sentencing judge even though the sentencing sheets themselves were unambiguous. The ALC further noted that in federal courts and a number of other jurisdictions, the oral pronouncement of a sentence controls over a written judgment.

The court of appeals reversed, holding the sentencing sheets controlled and because they are unambiguous, the ALC and the Department erred in considering the transcript as well. *Tant*, 395 S.C. at 449, 718 S.E.2d at 755. Accordingly, the court of appeals determined Tant's sentence to be fifteen years and reversed. *Id.*

## ISSUE PRESENTED

What process must the Department engage in to determine an inmate's sentence as intended by the sentencing judge?

## LAW/ANALYSIS

### I. DUE PROCESS

We first address the troubling manner by which the Department altered Tant's sentence without his involvement and conclude it constituted a denial of due process.

 Under both our state and federal due process clauses, no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; S.C. Const. art. I, § 3. "The fundamental requirements of due process include notice, an opportunity to be heard in a meaningful way, and judicial review." *State v. Binnarr*, 400 S.C.

156, 165, 733 S.E.2d 890, 894 (2012). Determining whether an individual has been denied due process requires an inquiry into whether the interest involved can be defined as liberty or property within the meaning of the Due Process Clause, and if so, what process is due under those circumstances. *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 571–73, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ There can be no doubt the length of an inmate's incarceration implicates a constitutional liberty interest. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 18, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (Powell, J., concurring in part and dissenting in part) ("Liberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action."). Accordingly, we need only determine what process is required.

We fully appreciate the Department's duty to correct mistakes that may occur in recording an inmate's sentence and are cognizant of the fact that in some instances the Department's correction will resolve nothing more than a clear clerical error. However, we cannot ignore the reality that an individual's freedom is implicated in these determinations. As this case makes plain, at times inputting an inmate's sentence in its records requires more from the Department than the ministerial act of looking to the face of the sentencing sheet.[2]

---

**2.** Contrary to the suggestion made in the concurring opinion, the Department performs an administrative function in recording an inmate's sentence and in interpreting an unclear judicial pronouncement of a sentence when necessary. The Department has no independent sentencing authority and nothing in our opinion indicates otherwise. In carrying out the executive function of incarcerating inmates, the Department must review the sentencing sheets provided by the judiciary to ascertain the sentence imposed by the court. Based on this review, the Department inputs that sentence into its records and retains the prisoner in its custody until that sentence has been served. During this process, the Department may run across judicial pronouncements of a sentence that are not clear from the face of the sentencing sheet alone. As discussed in more detail, *infra,* in those instances the Department can consider the court's transcript to determine what sentence the judiciary intended to impose. In doing so, the Department performs the administrative task of implementing the law as set forth by the judiciary and is in no way imposing a sentence or resentencing an inmate.

We therefore hold whenever the Department alters an inmate's sentence in its records, it must give the inmate formal notice of the change and advise him of his right to file a grievance and obtain a hearing.[3]

## II. SENTENCE DURATION

Turning now to the merits of the case, the Department contends it should be allowed to consider the sentencing transcript and any communication with the sentencing judge in its determination of whether Tant's sentences run concurrently or consecutively. We disagree and hold the Department is confined to the face of the sentencing sheets absent ambiguity. Because here we find the sheets ambiguous, we must interpret them along with the transcript, which we also find ambiguous, and hold Tant's sentences run concurrently.

■■■ "The rule of law is well settled that two or more sentences of a defendant to the same place of confinement run concurrently, in the absence of specific provisions in the judgment to the contrary...." *Finley v. State*, 219 S.C. 278, 282, 64 S.E.2d 881, 882 (1951). Although the intent of the judge is controlling in determining whether sentences run concurrently or consecutively, "[a]mbiguity or doubts relative to a sentence should be resolved in favor of the accused." *State v. DeAngelis*, 257 S.C. 44, 50, 183 S.E.2d 906, 909 (1971).

■■■ The Department initially contends it should be allowed to consider the judge's letter in determining the length of Tant's sentence. Although we respect the Department's responsibility to administer a sentence as intended by the judge, we cannot countenance this practice. The judge sent the letter two-and-a-half years after sentencing and at that point

---

3. The concurrence would have us require the Department to bring a declaratory judgment action in the circuit court in instances where the inmate disagrees with a reinterpretation of his sentence. The concurrence sets forth no basis in law for imposing this procedure upon the Department. The relevant legal doctrine at issue here is that of due process, and as applied in our opinion, due process requires notice and an opportunity to be heard, both of which are afforded by the procedure outlined above. The inmate who is allegedly aggrieved by an ambiguous sentence can, if he chooses, seek judicial review through the grievance process and thus, "the interpretation of the unclear sentence" would be "made by a judicial officer."

no longer had jurisdiction over the case. *State v. Campbell,* 376 S.C. 212, 215, 656 S.E.2d 371, 373 (2008) (noting the "long-standing rule of law that a trial judge is without jurisdiction to consider a criminal matter once the term of court during which judgment was entered expires," except for post-trial motions filed within ten days pursuant to Rule 29 of the South Carolina Rules of Criminal Procedure). Therefore, Judge Saunders was without jurisdiction to make any subsequent pronouncement concerning Tant's sentence. Such correspondence may not be considered in determining the length of an inmate's sentence, even if both the sentencing sheets and the transcript are vague or unclear.

We also reject the Department's claim that the court of appeals erred in holding it can only consider a sentencing transcript if the sentencing sheets are ambiguous. The Department asserts this pronouncement runs contrary to our holding in *Boan v. State,* 388 S.C. 272, 695 S.E.2d 850 (2010). We disagree with the Department's expansive reading of *Boan.*

In *Boan,* we were faced with the issue of whether an unambiguous oral pronouncement controls over an unambiguous sentencing sheet. *Id.* at 274, 695 S.E.2d at 851. Upon conviction, the trial judge orally sentenced Boan to a total of twenty years' imprisonment. *Id.* at 274–75, 695 S.E.2d at 852. However, the sentencing sheet later signed by the judge indicated Boan was to serve a total of thirty years' imprisonment. *Id.* at 275, 695 S.E.2d at 852. Boan filed an application for Post–Conviction Relief (PCR), arguing his counsel provided ineffective assistance in failing to object to or file a motion regarding the discrepancy between the oral and written sentences. *Id.* at 275, 695 S.E.2d at 851–52. The PCR court dismissed his application, but on certiorari the Court reversed. *Id.* at 278, 695 S.E.2d at 853. We recognized in our analysis that, "Although this Court has not previously spoken on the issue of whether an oral pronouncement of a sentence controls over a conflicting written sentencing order, the majority of jurisdictions that have considered this point hold the oral pronouncement controls." *Id.* at 276, 695 S.E.2d at 852. Despite this acknowledgement, we nevertheless declined to adopt a bright-line rule and held simply that "a trial's fairness is compromised when a trial judge *increases* a defendant's

sentence outside his presence" and therefore, "in a situation such as the one on appeal, due process requires the judge's oral pronouncement control over a conflicting written sentencing order." *Id.* at 277, 695 S.E.2d at 852 (emphasis added). Our reasoning was fundamentally rooted in the defendant's constitutional right to be present at all stages of the trial, including sentencing. *Id.*

The Department contends our *Boan* decision adopted the majority rule that an oral pronouncement controls. We disagree. *Boan's* holding was plainly limited to its facts. In explicating the rationale for our decision, we specifically relied on the defendant's constitutional right to be present at every stage of trial instead of adopting a bright-line rule. Here, Tant does not allege his sentence was increased in the sentencing sheets; rather, the sheets arguably indicate a reduction of his sentence. Therefore, the constitutional concerns presented in *Boan* are not implicated here. Instead, Tant's case involves the routine practice undertaken by the Department in discerning an inmate's sentence and how it addresses situations where it subsequently discovers the original interpretation may be erroneous.

■ In this context, we find the court of appeals' ruling both sound and practical. Although the Department expresses concern about its ability to follow the intent of the trial judge if its ability to reference other evidence is constrained, the sentencing sheets were signed by the judge and both attorneys without objection and are assumed to memorialize the judge's intention no less than what was pronounced from the bench. *See Finley,* 219 S.C. at 284, 64 S.E.2d at 883 ("A sentence should be so complete as to need no construction of a court to ascertain its import."). We see no reason why the Department should not be able to rely on unambiguous sentencing sheets as indicative of the intended sentence.

■ Applying this reasoning to the case before us, we find the written sentencing sheets are ambiguous as to whether the animal fighting sentences run concurrently or consecutively to one another. Turning to the oral pronouncement, we find that

it too is ambiguous. We therefore hold Tant's sentences must be construed to run concurrently.[4]

The Department argues that the written sentences are ambiguous because two of the animal fighting convictions can be nullified by payment of restitution. Therefore to construe them as running concurrently with the other animal fighting convictions—as the sheets indicate—would render the payment of restitution a futile act as it would have no practical effect on the length of this sentence. Tant argues there are other reasons to pay restitution than simply to reduce a sentence, such as removing a potential aggravating factor for any future conviction or allowing mitigation during his parole review. We find that argument unpersuasive, especially for a defendant who was convicted of forty-one counts of animal fighting. Nullifying two of those counts would not appear to remove much in terms of aggravating factors if he were ever convicted again. However, applying this reasoning also renders Judge Saunders' oral pronouncement ambiguous. Accordingly, we find both ambiguous.

During sentencing, Judge Saunders initially stated the six animal fighting convictions at issue were to be served "consecutive to [the ABHAN sentence]." However, upon request for clarification by the solicitor, Judge Saunders stated that four animal fighting indictments would be "consecutive to each other and consecutive to [the ABHAN sentence]." He then addressed the remaining two animal fighting convictions and stated they should be served "consecutive to [the ABHAN sentence] as to both. However ... these two sentences shall be null and void upon payment of restitution...." The judge thereafter executed the sentencing sheets, which indicate all six animal fighting convictions are to be served consecutive to

---

4. The Department claims the court of appeals' decision produces uncertainty as to when a sentence is ambiguous and how this determination should be made. Ambiguity in a sentence is established the same way as it is established for contract terms or statutes, essentially where the language, and therefore the intent, is in some way unclear. *E.g. S.C. Dep't of Natural Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302 (2001) ("A contract is ambiguous when the terms of the contract are reasonably susceptible of more than one interpretation."); *State v. Hudson*, 336 S.C. 237, 247, 519 S.E.2d 577, 582 (Ct.App.1999) (noting the court must construe terms that "give[ ] rise to doubt or uncertainty as to legislative intent").

the ABHAN but are silent as to whether they are to be served consecutive to one another. Additionally, two of the sentences can be nullified by paying restitution—basically mirroring his initial oral pronouncement.

Accordingly, Judge Saunders' first oral pronouncement could either indicate a total sentence of fifteen years or twenty-five years, with each animal fighting conviction served consecutive only to the ABHAN conviction or with the two convictions allowing for restitution served consecutive to the other charges. However, in Judge Saunders' subsequent oral clarification he states four of the animal fighting convictions are consecutive to each other, but does not say the same about the two subject to restitution. Therefore, this second statement could either be read as thirty years—four of the animal fighting convictions served in succession after the ABHAN and the other two served concurrently—or forty years if we assume the requirement of paying restitution indicated the judge intended those sentences to be served consecutively as well.

Because both of the trial court's pronouncements, oral and written, are susceptible to multiple interpretations, they are ambiguous. Accordingly, the sentences must be construed in the defendant's favor to run concurrently. *Finley,* 219 S.C. at 283, 64 S.E.2d at 883 ("The importance of accuracy in the statement of the terms of the sentence is a right which is accorded every defendant. . . . If it is vague and indefinite, the terms will run concurrently." (alteration in original)). We therefore hold Tant's sentence is for fifteen years.

## CONCLUSION

■■■ Based on the foregoing, we hold the Department must provide an inmate with timely, formal notice when it seeks to recalculate its initial determination of his sentence and advise him of his right to file a grievance and obtain a hearing. Additionally, we hold the Department is confined to an unambiguous sentencing sheet in determining an inmate's sentence, but may consider the sentencing transcript if the sheet is ambiguous. Furthermore, we find in this case that both the sentencing sheets and the transcript are ambiguous,

and therefore, Tant's sentences must be construed to run concurrently.

TOAL, C.J., BEATTY and KITTREDGE, JJ., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES.

I concur in the result but would adopt the following procedure should this circumstance arise again.

This case requires us to determine the appropriate procedure when the Department of Corrections seeks to increase an inmate's sentence based upon the Department's determination that it has misinterpreted that sentence. In my opinion, the onus for upward recalculations of sentences must be placed on the Department and not on the inmate, and the interpretation of the unclear sentence must be made by a judicial officer and not by an executive agency.[5] I would therefore hold that when the Department proposes to reinterpret a sentence in a manner that would increase the time an inmate must serve, the Department must notify the inmate of the proposed change and of his right to judicial interpretation of the sentence. If the inmate does not agree to the Department's proposed reinterpretation, then I would require the Department to bring a declaratory judgment action in the Court of General Sessions. *See* S.C.Code Ann. § 15–53–20 (2005); *compare In re Shaquille O'Neal B.,* 385 S.C. 243, 684 S.E.2d 549 (2009).

Further, this record reflects the increase in respondent's sentence was initiated by an *ex parte* communication between a Department employee and a solicitor which led to *ex parte* communications with respondent's sentencing judge. Moreover, based upon the Department's general counsel's letter, this case does not appear to represent an isolated instance of such contacts. I believe we must clearly and unequivocally end this practice which serves to undermine confidence in the fairness of our system.

---

**5.** The exercise of sentencing authority by the Department would violate the separation of powers doctrine. *State v. Archie,* 322 S.C. 135, 470 S.E.2d 380 (Ct.App.1996).